**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HUMBERTO GARCIA, *on behalf of himself,*
*FLSA Collective Plaintiffs,*
*and the Class,*

               Plaintiff,

   v.

FOX HARLEM LLC.,
SERENA HARLEM LLC.,
SKDL CORP,
    and
SUSANNAH KOTEEN

             Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Plaintiff HUMBERTO GARCIA (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this class and collective action Complaint against Defendant, FOX HARLEM LLC. d/b/a THE FOX, SKDL CORP. d/b/a LIDO, SERENA HARLEM LLC. d/b/a BIXI (hereinafter "Corporate Defendant"), and SUSANNAH KOTEEN ("Individual Defendant"; and, together with Corporate Defendant, "Defendants"), and states as follows:

## INTRODUCTION

1.     Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants:

(1) unpaid overtime wages due to (a) compensation of overtime hours at straight time rate and/or (b) fixed salary compensation (depending on individual and time period); (2) liquidated damages; and (3) attorneys' fees and costs.

2.    Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime wages due to (a) compensation of overtime hours at straight time rate and/or (b) fixed salary compensation (depending on individual and time period); (2) unpaid spread of hours; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

3.    Plaintiff additionally alleges that Defendants unlawfully retaliated against him for raising complaints regarding Defendants' failure to properly compensate him in violation of the NYLL and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, (3) compensatory damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

4.    Plaintiff further alleges that Defendants breached their contract with Plaintiff and others similarly situated by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA").

5.    Plaintiff also alleges that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

**JURISDICTION AND VENUE**

6.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

8.    Plaintiff, HUMBERTO GARCIA is a resident of New York County, New York.

9.    At all relevant times, Defendants have operated three (3) dining establishments as a single integrated enterprise, at the following addresses:

    a.    THE FOX: 2224 Frederick Douglass Boulevard, New York City, NY, 10026;

    b.    LIDO: 2168 Frederick Douglass Blvd, New York, NY*; and*

    c.    BIXI: 2164 Frederick Douglass Blvd, New York, NY 10026 (collectively, the "Restaurants").

10.    All the Restaurants are operated as a single integrated enterprise under the common control of the Individual Defendant. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

    a.    All Restaurants are under the control of Corporate and Individual Defendants. Specifically, Individual Defendant SUSANNAH KOTEEN operates the totality of the Restaurants.

    b.    The Restaurants' liquor licenses, submitted by Defendant to the New York State Liquor Authority, list Individual Defendant SUSANNAH KOTEEN as a "principal" at FOX HARLEM LLC. *See* **Exhibit A**.

    c.    SUSANNAH KOTEEN is indicated as operator of the Restaurants on the website of The New York City Hospitality Alliance. *See* **Exhibit B**.

    d.    Also, SUSANNAH KOTEEN identifies herself on LinkedIn as the proprietor of Lido. *See* **Exhibit C**.

    e.    Serena Bass is the Executive Chef of all three restaurants, BIXI and LIDO are considered "sister restaurants" on BIXI's website. *See* **Exhibit D**.

f.  An official website of the City of New York lists SUSANNAH KOTEEN as the owner of SERENA HARLEM LLC. d/b/a BIXI. This website also shows that SKDP CORP. is d/b/a/ as LIDO. An official website of New York State lists SUSANNAH KOTEEN as the CEO of SKDP CORP. *See* **Exhibit E**.

g.  The Restaurants are jointly marketed on the shared social media accounts: the Facebook account of THE FOX promotes LIDO, BIXI, and their shared Executive Chef, Serena Bass. The restaurants have also made identical posts about their bartenders. See **Exhibit F** for screenshots taken from Defendants' Facebook and Instagram pages.

h.  Restaurants have a centralized Human Resources that deals with hiring, firing, and administering all the Restaurants' work force.

i.  The Restaurants THE FOX and LIDO are within couple of blocks and LIDO and BIXI are just steps away from each other. Because of the proximity of the Restaurants, the Restaurants interchange employees and supplies, and are under common management. Plaintiff was hired to perform work at THE FOX and LIDO and eventually transferred by Defendants among these locations during their employment.

All Corporate Defendants are appropriately named in this action because the Restaurants share identical illegal wage and hour policies and are under common ownership, management and control. The Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the FLSA Collective Plaintiffs, and Class Members for whom Plaintiff seeks to represent. Defendants operate the Restaurant through the following Corporate Defendants:

a) Corporate Defendant FOX HARLEM LLC. d/b/a THE FOX is a domestic limited liability company organized under the laws of the State of New York with an address for service of process at 2168 Frederick Douglass Blvd., New York, NY, United States, 10026 and a principal Place of Business located at 2224 Frederick Douglass Blvd., New York, NY 10026.

b) Corporate Defendant SKDL CORP. d/b/a LIDO, is a domestic business corporation organized under the laws of the State of New York with an address for service of process and a principal place of business located at 2168 Frederick Douglass Blvd., New York, NY, United States, 10026.

c) Corporate Defendant SERENA HARLEM LLC. d/b/a BIXI is a domestic corporation organized under the laws of the State of New York with an address for service of process at 2168 Frederick Douglass Blvd., New York, NY, United States, 10026 and a principal Place of Business located at 2164 Frederick Douglass Blvd, New York, NY 10026.

11.     Individual Defendant SUSANNAH KOTEEN is an owner and principal of Corporate Defendants. Defendant SUSANNAH KOTEEN exercises operational control as it relates to all employees including Plaintiff and the Class. Defendant SUSANNAH KOTEEN frequently visits the Restaurants. Defendant SUSANNAH KOTEEN exercises—and also delegates to managers and supervisors—the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment, including those of Plaintiff, and the Class. At all relevant times, employees of the Restaurants could complain to Defendant SUSANNAH KOTEEN directly regarding any of the terms of their employment, and Defendant SUSANNAH KOTEEN would have the authority to effect any

changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating, or hiring such employees. Defendant SUSANNAH KOTEEN had the power and authority to supervise and control supervisors of Plaintiff and Class Members and could reprimand employees.

12. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

13. Corporate Defendants are properly named on the basis of their outstanding liability to the Class Members for whom Plaintiff seek to represent.

14. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

15. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16. Plaintiff bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house and back-of-house persons (including servers, bussers, bartenders, food runners, delivery persons, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

17. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

them their proper wages. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs: (i) unpaid overtime, due to a fixed salary; (ii) unpaid overtime wages due to compensation of overtime at a straight time rate;  (iii) liquidated damages; and (iv) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

18.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

19.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house persons (including servers, bussers, bartenders, food runners, delivery persons, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

20.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty members of the Class.

22.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (i) unpaid wages, including unpaid overtime, due to a fixed salary; (ii) unpaid overtime wages due to compensation of overtime at a straight time rate; (iii) failure to compensate spread of hours premiums, (iv) failing to provide proper wage statements per requirements of NYLL; and (v) failing to properly provide wage notices, at the date of hiring and annually, per requirements of NYLL.

23.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

24.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

25.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.     Defendants and other employers throughout the state violate NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.   Whether Defendants employed Plaintiff and the Class within the meaning of NYLL;

b.   What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d.   Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e.   Whether Defendants failed to properly compensate Plaintiff and Class Members for all hours worked, including overtime hours, due to compensating them on an illegal fixed salary basis;

f.   Whether Defendants paid the Plaintiff and Class Members spread of hours premium for shifts worked in excess of ten (10) hours;

g.   Whether Defendants provided wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL; and

h.   Whether Defendants provided proper wage statements for each pay period to Plaintiff and Class Members, and whether those wage statements properly stated Plaintiff's and Class Members' overtime compensation and spread of hours in accordance with NYLL.

## STATEMENT OF FACTS

### i.  Plaintiff's Unpaid Overtime Wages

28.     In the summer of 2016, Plaintiff HUMBERTO GARCIA was hired by Defendants to work as a grillman at Defendants' Lido Restaurant, located at 2168 Frederick Douglass Blvd, New York, NY 10026. Plaintiff worked for Defendants until he was transferred to Defendant's The Fox restaurant in November 2022. While employed at this location, Plaintiff regularly clocked in and received payments by check.

29.     From the start of his employment until around November 2022, Plaintiff was scheduled by Defendants to work six (6) days per week, for seven (7) hours per day the whole week except Tuesday, for a total of forty-two (42) hours per week.

30.     From the beginning of his employment in 2016 until around November 2022, Plaintiff worked at Defendants' Lido restaurant and was paid $17 per hour, which was later increased to $18 per hour. For the overtime hours there, Defendants only paid Plaintiff, FLSA Collective Plaintiffs, and Class Members at a straight time rate. Until his transfer to the Fox location, Plaintiff was paid a straight-time rate of $18 per hour, despite consistently working approximately 42 hours each week. He did not receive any overtime compensation for the hours worked beyond 40 per week.

31.     Defendants similarly paid FLSA Collective Plaintiffs and Class Members on an improper straight-time rate and failed to compensate them their overtime premium of time and one half for all hours worked over forty.

32.      From around November 2022 to June 2023, Plaintiff was employed at Defendants' The Fox restaurant and he was scheduled by Defendants to work seven (7) days per week, for fifteen (15) hours per day, for a total of one hundred and five (105) hours per week because the

Fox restaurant was understaffed. During the entire duration of his employment at Defendants' The Fox restaurant, Plaintiff held the title of Chef, but approximately ninety percent (90%) of his actual job duties consisted of tasks customarily performed by individuals in the positions of cook, grillman, and dishwasher. From the start of Plaintiff's employment in Defendants' The Fox restaurant until the termination of employment, Plaintiff had not clocked in and out.

33.    From around June 2023 to February 2025, Plaintiff was scheduled by Defendants to work six (6) days per week, for eleven (11) hours per day, for a total of sixty-six (66) hours per week. During February-March 2025, Plaintiff worked six (6) days per week, Monday, Wednesday and Thursday from 10 a.m. to 9 p.m., and Friday through Sunday from 9 a.m. to 12 a.m., for a total of seventy-eight (78) hours per week. From approximately June 2023 through March 2025, Plaintiff was regularly scheduled to have Tuesdays off; however, Defendants routinely required Plaintiff to report to work on those days, in violation of the agreed-upon schedule.

34.    From November 2022 to March 2025, Plaintiff was told he was to be paid a fixed weekly salary of $1,200 for a standard 40-hour work week. There was never any understanding between Plaintiff and Defendants that the fixed salary was intended to cover any overtime hours worked. However, only $1,070 was actually received each week, with the difference attributed to "tax withholding." Despite this, no paystubs were provided to verify the deductions or clarify the amounts withheld, which raises concerns about transparency and proper documentation. From June 2023 to March 2025, he also received an additional $200 in cash each week, handed to him in an envelope.

35.    Throughout their employments, Defendants did not pay Plaintiff, FLSA Collective Plaintiffs and Class Members any overtime premiums for hours worked over 40 in a single workweek. For nearly six (6) consecutive months, Plaintiff regularly worked approximately fifteen

(15) hours per day, seven (7) days per week at Defendant's establishment, The Fox Restaurant. Despite this demanding schedule, Plaintiff was not compensated for any overtime hours worked, as he was paid a fixed salary that failed to account for overtime, in violation of the FLSA and NYLL.

36.    Similarly, FLSA Collective Plaintiffs and Class Members regularly worked in excess of forty (40) hours per workweek but never received any overtime premiums for hours worked in excess of forty (40) a week due to a fixed salary.

37.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff and Class Members the proper overtime rates for all their hours worked over forty (40) per week, in violation of the FLSA and the NYLL. Defendants awareness and willfulness is obvious based on the fact that Defendants (i) scheduled and required Plaintiff and Class Members to work over forty (40) hours per week, and (ii) set Plaintiff's and Class Members pay to fixed-rate salaries.

38.    Front-of-house employees of the Restaurants were similarly underpaid, receiving no overtime compensation, in violation of the FLSA and the NYLL.

**ii.  Plaintiff's Unpaid Spread of Hours Premiums Claim**

39.    Throughout their employments, Plaintiff, FLSA Collective Plaintiffs, and Class Members were regularly required by Defendants to work double shifts, which were always over ten (10) hours in length. From November 2022 to June 2023, the plaintiff was scheduled to work approximately fifteen (15) hours per day, seven days a week. Despite regularly working shifts that extended beyond ten (10) hours, he was not paid any spread of hours premium. Furthermore, from June 2023 until the termination of his employment in March 2025, the plaintiff continued to work

shifts exceeding ten (10) hours on a regular basis, yet still did not receive the mandated spread of hours compensation.

40.    Similarly, Class Members were required by Defendants to work shifts with a spread of more than ten (10) hours. Despite requiring Plaintiff and Class Members to work such shifts, Defendants failed to pay Plaintiff, and Class Members their owed spread of hours premiums for every workday with a spread of more than ten (10) hours, in violation of the NYLL.

41.    Defendants' failure to pay spread of hours premiums to Plaintiff and Class Members were clearly intentional. Defendants knew Plaintiff and Class Members were working shifts lasting up to ten (10) or more hours because Defendants were the ones to require such amounts of work.

### iii. **Plaintiff's Retaliation Claim**

42.    Approximately fourteen (14) days prior to his termination, Plaintiff discovered that $200 in cash, which was expected to be included in an envelope as part of his compensation, was missing. Plaintiff promptly brought this discrepancy to the attention of Defendants and requested that the missing wages be corrected. In response, the Chef of The Restaurants Alfredo (LNU) stated, "I paid you everything you're owed," and refused to make any adjustment.

43.    Following Plaintiff's complaint regarding the unpaid wages, Defendant SUSANNAH KOTEEN's behavior toward Plaintiff noticeably changed. Plaintiff was subjected to increased scrutiny, and Defendants appeared to begin searching for pretextual reasons to terminate his employment. Ultimately, Plaintiff was fired under the purported justification of "downsizing," However, the true motive behind his termination was retaliatory in nature.

iv. **Plaintiff's WTPA Violation Claims**

44.    At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

45.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

46.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20, 2020)

47.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay

provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

48.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

49.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

50.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

51.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y*., LLC, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

52.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period,

which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

53.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

54.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiff have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

55.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

56.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

57.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

58.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF FAIR LABOR STANDARDS ACT

59.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

60.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

62.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

63.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs at the proper overtime rate for their hours worked over forty hours a week due to improperly compensating them on a fixed salary basis.

64.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs at the proper overtime rate for their hours worked over forty hours a week due to improperly compensating them at their straight time hourly rates for hours worked in excess of forty (40) in a workweek.

65.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

66.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

67.     Defendants failed to properly disclose or apprise Plaintiff or FLSA Collective Plaintiffs of their rights under FLSA.

68.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

69.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including unpaid overtime, due to a fixed salary basis; unpaid wages, plus, an equal amount as liquidated damages.

## COUNT II

## **VIOLATION OF NEW YORK LABOR LAW**

70.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

71.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

72.     At all relevant times, Defendants had a policy of improperly compensating Plaintiff and Class Member on a fixed salary basis.

73.     Defendants violated Plaintiff's and Class Members' rights by failing to pay overtime wages for hours worked in excess of forty per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay due to a fixed salary, in violation of the NYLL.

74.     At all relevant times, Defendants knowingly and willfully engaged in a policy and practice of refusing to pay Plaintiffs and Class members all overtime wages due to improperly compensating Plaintiffs and Class members at their straight time hourly rates for hours worked in excess of forty (40) in a workweek.

75.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with wage notice, at date of hiring and annually thereafter, as required under the NYLL.

76.      Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage statements as required under the NYLL. Defendants provided fraudulent wage statements that failed to accurately reflect the number of hours worked and the proper compensation for Plaintiff and Class Members.

77.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to a fixed salary; unpaid wages, including overtime, reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**

**RETALIATION UNDER THE NEW YORK LABOR LAW**

1.    Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

2.    At all relevant times Plaintiff was an employee of Defendants within the meaning of the NYLL and was a person covered by and intended to benefit from the provisions of the NYLL.

3.    Defendants willfully violated the NYLL by retaliating against Plaintiff by ultimately terminating his employment, after he raised complaints about the missing wages ($200 in cash per week).

4.    Defendants' actions constitute a violation of § 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, <u>reasonably and in good faith, believes violates any provision of this chapter</u>, or any order issued by the commissioner. . . . (emphasis added).

5.    Defendants' retaliatory actions, including ultimate termination of Plaintiff was in willful disregard of the provisions of the NYLL.

6.    As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings and egregious emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, back pay, front pay, and attorneys' fees and costs.

## COUNT IV

## <u>CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS</u>

## <u>UNDER 26 U.S.C. § 7434(a)</u>

23

78.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

79.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

80.     By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

81.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

82.     Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

**COUNT V**

**<u>BREACH OF CONTRACT</u>**

83.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

84.     "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he  duties of good faith and fair dealing … encompass any promises which a

reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, at *10-11 (2002).

85.     When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

86.     Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file proper W-2. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT VI

## <u>UNJUST ENRICHMENT</u>

87.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

88.     To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

89.     Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

90.     Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class Members respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including overtime, due to a fixed salary due under the FLSA and NYLL;

d.  An award of unpaid wages, including overtime compensation at the proper rate of one-and-one-half times the regular rate of pay for hours worked in excess of forty per workweek, due under the FLSA and NYLL;

e.  An award of unpaid spread of hours premiums for shifts worked in excess of ten (10) hours;

f.   Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

g.   Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

h.   An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

i.   An award of back pay, front pay, compensatory damages, damages for egregious emotional distress, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiff, pursuant to the NYLL and FLSA;

j.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty per workweek, pursuant to the FLSA;

k.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty per workweek, pursuant to the NYLL;

l.   An award of five thousand dollars in statutory damages to Plaintiff and each Class Member under 26 U.S.C. § 7434;

m.   An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

n.   Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

o.   Designation of this action as a class action pursuant to F.R.C.P. 23;

p.    Designation of Plaintiff as Representative of the Class; and

q.    Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: August 14, 2025

Respectfully submitted,

By:   /s/ *CK Lee*
C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*